Good morning, Your Honor. May it please the Court, my name is Al Arpad, from Fenimore Craig Jones Vargas for Meritage Homes. With me is, for the client, is Scott Shelley. I'd like to reserve two minutes for rebuttal. I'm a little apprehensive today because I read an awful lot of FDIC cases that have been decided in the last year, and it kind of seems like the FDIC always wins. Fortunately, we have the O'Melveny case to tell us that that's not the rule of decision. The FDIC is not always supposed to win. I will say that I think our case is a better case from its inception than any of the other cases I read. There are several reasons for that. Let's start with Meritage improved the collateral for this loan and didn't get paid for it. That's the equities of it. We improved the collateral. It benefited all the lenders in the chain. The FDIC realized on the collateral when they sold the loan effectively. The subsequent buyer, Rescon, then foreclosed and realized on the collateral. Second, the loan documents in this case provided for this type of a situation. There's been a lot of discussion about did we have a security interest. Let me try to be clear about that. We do not claim that we had a security interest that primed the lender in this case. What we do claim is that we had what's in the loan documents, and it's kind of a hybrid security device, call it. We can call it whatever you want, but we've been clear from day one that we have what's in the loan documents. It's kind of a security interest, or at least it's a substitute for a security interest. It could also be considered to be in the nature of a limited guarantee. That is, that the lender is saying we'll pay you out of these foreclosure proceeds if that ever needs to happen. It could be called a lot of things. It could be called a participation interest in the foreclosure proceeds. But it's clear if you read the loan documents that it was intended to survive and pass on to successor lenders. I haven't seen that in any of the other cases that the or clearly considered in the statute that the FDIC is trying to bring to bear on us. Um. Kennedy, are you getting to the point of why the FDIC can't use receiver's certificates? Is that where this is leading us? Yes. That is, I hope, where this is leading us. And then it seems to me that someplace along the line you're going to have to address the Baptista case, which Judge Tashima wrote with no hesitancy that there's no abuse of discretion of FDIC satisfying judgments with receiver's certificate. How do we get around that case? It just seems to me it's you get around that case by applying the exception that's set forth in the Sharp case. And we do that even though that wasn't argued below, right? Our case has always been we have a judgment and the FDIC should pay it, which is essentially what the Sharp case says. We did not admittedly find the Sharp case until we had. And that wasn't so the district court wasn't even making that determination. So it seems to me that wasn't really argued in the shape of Sharp in the district court. So our choice would be to either say that's a waiver or to say it's a legal issue and we'll consider it anyway, which I guess would be your preference. I think it certainly is a legal issue that you should consider anyway. But let me give you a couple of things that give you a sense of what we were arguing in the court below. Can Counsel Judge Gould, if I could ask you to just clarify as you do that, what it is that you contend that FDIC in its own capacity did that's a breach that gives you a right to claim against it as opposed to a claim against the receiver? Yes, Your Honor. The interest that we have follows the collateral, follows the loan, and is assertable against each lender who realized on the collateral. Now, and we in fact have a judgment. So trying to say that the judgment's wrong or we shouldn't have gotten the judgment, but it says that the FDIC breached our contract by not paying us on that claim under the loan documents. And I think it's a fair claim. We've got the loan documents. We've got that interest. The FDI went and sold the loan on and didn't pay us and didn't even issue us a receiver certificate initially. They said, no, we're not going to recognize your interest at all. So we went into Federal court and said, we have these loan documents. The FDIC should be paying us. The FDIC did not show up. We got a judgment then saying that the FDIC had in fact breached the contract and been unjustly enriched. So I can speculate, Your Honor, as to how those proceedings would have gone if the FDIC had showed up. But in fact, they didn't show up, and what we got was a judgment saying that they had breached the contract. I do think it's a fair case that we had going into that. But at the end of the day, we had a judgment against them. Did that answer your question, Your Honor? Not entirely, but partly. But was there — doesn't the record show a breach by the failed bank before it failed? Yes. So that you had a right to this claim against the bank that failed, which normally I would have thought the FDIC would inherit as a receiver, but its obligations would be to pay out pro rata based on the assets that it has. That is absolutely true as to the claim against the failed bank. We had a claim against the failed bank, and we submitted it through the administrative process. And that's at least one of the bases for our jurisdiction, because when they denied it, we were allowed to then go into district court. But in your complaint, the complaint actually says Meritage was damaged by the bank's breach, which gets to, I think, Judge Gould's point. I think that the complaint visualizes both of those things. The complaint clearly anticipates that we started this going into the FDIC with a claim against the failed bank. The FDIC then did several things. They unfairly denied our claim. But they also, in the meantime, and to some extent happened while the proceedings were ongoing. Does the complaint say that the FDIC breached the contract? It said breach of contract against the FDIC. I mean, I believe that. What's the allegation? We recited several of those, I think, at the beginning of our reply brief. Under the heading, breach of contract, Meritage alleged, despite Meritage's faithful performance of its contractual obligations, which is one of the elements under SHARP, is that we were supposed to have fully performed, the FDIC, as receiver for the bank, in parentheses, has materially breached the provisions of SAME. Now, admittedly, it's notice pleading. We didn't go into a tremendous amount of detail, because at that point we filed the complaint. We didn't know the FDIC was going to default. Perhaps we would have tried to create a better record for ourselves if we'd known that. That's the sort of thing that would have been fledged out. The language that you read said the FDIC, as receiver, has breached the bank. Yes, Your Honor, I don't think there's any question. I'm sorry. No, I'm just, it sounded to me like the language you read from the complaint said the FDIC, as receiver for the bank, had breached, which doesn't sound like a claim against the FDIC for its own conduct. As opposed to its receiver. I absolutely think, I mean, that's the capacity they were in. There's no question. We're not, we're not, we're not proceeding against FDIC corporate. We're proceeding against the FDIC as receiver. That's fairly common terminology in these cases. But I think that it was clear enough in both the complaint and the judgment. And, in fact, you see that when the FDIC moved to lift the default. Their first argument was we couldn't even tell this was an administrative appeal because they were making these direct allegations of breach. Now, I think it is true what the FDIC was initially saying, that we had a pass-through claim that was then going to survive on to Rescon, the next lender, who, because the FDIC didn't actually foreclose, so that interest still exists. But I believe it exists against all three of them. It existed against the failed bank prior to the receivership. When the interest passed to the FDIC and the FDIC benefited from the collateral, it existed against the FDIC. And when it went on to Rescon, it still exists against Rescon. And if we don't get paid by the FDIC, we should be able to pursue against Rescon. And, counsel, what's the status of your claims against Rescon and or Stearns? And I was having trouble understanding the significance of one of the issues raised, challenging the district court not letting you have a summons against Rescons in this case, because if you've got a separate action against them, how does that matter? We went ahead then and filed a separate action against them, and it has been stayed because, in fact, Rescon has raised some of the same defenses that the agency is raising here. They are saying that it was satisfied by the FDIC's receiver certificate. They are saying we're not allowed to assert third-party beneficiary claims, et cetera, et cetera. So that has been stayed pending the outcome of this case, but it does exist. And one of the things that we're here for today is to try to make sure there's nothing in your ruling that says we're precluded from pursuing that. Counsel, in trying to figure out where Baptista fits into this, what you're pursuing now is a judgment that was paid off by these receiver certificates. And in the case we had before, we said, well, this is the right way to go about it, because unless we let the FDIC use the receiver certificates, people will be able to jump in at the head of the line. And this is a way of making sure that each person who's entitled to funds gets their fair share. What's wrong with that? What's wrong with that in allowing the FDIC to pay off your judgment with these receiver certificates, based upon what we said earlier of the reason for them? Two critical issues. First of all, I would agree that the receiver certificate probably satisfies the claim against the failed bank, the initial claim that we started out with at the very beginning of the administrative process. So we — and, in fact, I believe the status last time I checked is that the FDIC had paid something like 65 percent of depositor claims at this late date. So nothing's ever going to get paid on that. And that's over. The reason we believe that we still have a claim is because we also pled and got a judgment against the FDIC. And that judgment, even though we didn't know about SHARP at the time, falls cleanly within the SHARP exception. And, in fact, both Batista and McCarthy recognize that exception and describe it in terms that precisely fit our situation. When somebody alleges a breach against the FDIC based on their own full performance, which the FDIC refuses to pay for, that's a separate claim that fits within SHARP. And unless you're prepared to overrule SHARP or find some creative way I haven't thought of to distinguish it, I think we get paid under that exception to Batista. So your chore here will be to show that this is against the FDIC, not the FDIC as receiver. No. It is in their capacity as receiver. It's not something that the insurance fund did, FDIC corporate. It's something that they did in the handling of the claim. We allege that the only thing you challenge them for is paying out these receivers, these receipts. What else do they do that's in your complaint that you challenge them other than filing this notice that they did that the judgment's been paid with these receiver certificates? Your Honor, I see that I'm running out of time. I'll try to answer that as quickly as I can.  This is an important question. Thank you, Your Honor. We allege, first of all, the mishandling of the claim is the breach, and that's virtually the same thing that happened in SHARP. Those folks were owed money by the failed bank. They were supposed to get a wire, and instead they got a check, and then the FDIC dishonored the check. It's very parallel to what happened here. They started with a claim against the failed bank. The FDIC, in its handling of the claim, said, no, Stiff Arm, you get a receiver's certificate. You don't get paid. You're never going to get paid. That was a breach because of the nature of our claim. The nature of our claim was that we had already done the work, and it was following through the collateral against all successor lenders, including the FDIC in its capacity as a receiver standing in the shoes of the failed bank, not FDIC corporate. The SHARP claim, although I don't know that that was the term, would have been against the FDIC receiver. See, I think one question I have on that, and that goes to waiver, because it wasn't raised as a SHARP claim, so the district court was not really looking at it in that precise way. I mean, the district court was saying – I think the district court said, well, actually the breach was the INCA people. I wonder whether there's some factual issue that the district court needed to look at, had it known that it was actually analyzing it under that capacity. Under that rubric. The district court had limited ability to look at factual issues because it was a default. I understand. So, I mean, I think the – the – But there may have been some, if it was presented in that light, it might have been a different proceeding. The district court did not have the benefit of the SHARP case, and so it is certainly more understandable why the district court didn't recognize the SHARP case, because we didn't raise it. That's why we ask people to raise things in the district court and not on appeal, where we're then trying to figure out, well, is there – could there have been a different finding by the district court, had it known? In a very hypothetical way, I think, yes, that's true. But, I mean, listen to what it was that we were saying to the district court when we asked it to set aside dissatisfaction. We were focused, by the way, a lot of it on third-party arguments, which we haven't made in light of your GECCMC decision since then. But underlying all that is the most basic thing in the world. We have a judgment the FDIC should pay it. When the FDIC abuses its position as receiver to avoid paying a court-ordered judgment, cash payment is the only remedy, FDIC v. Lake Elsinore. Courts should not treat the FDIC as a sacred cow which may graze upon the rights of others at will unchecked by the courts, Cummings Properties. The FDIC has consistently abused its position as receiver and ignored its obligations to Meritage. As set forth above, the FDIC disallowed Meritage's claim, et cetera. This is page 11 of the initial motion to strike the satisfaction of judgment. So, I mean, we were arguing those facts. We were arguing that idea, the pretty simple idea, so there's not a ton of argument and elaboration about it. The FDIC should have to pay our judgment. Do I wish we'd found the sharp case sooner and saved everybody a lot of trouble? Sure. But I think this absolutely meets the standard for raising the issue. Kagan. All right. Thank you. We'll hear from the FDIC and the others. Good morning, Your Honors, and may it please the Court. I am Joseph Brooks from the FDIC's Appellate Litigation Unit. The FDIC does not always win, but it certainly should win here. What's at issue are really two things. One, did the district court abuse its discretion in denying a motion to strike the satisfaction of judgment, allowing the FDIC to satisfy the judgment with a receiver certificate, and two, did the district court abuse its discretion in denying the request that it issue a summons to third parties? Now, the Batista decision is clear. A district court judge does not generally abuse its discretion by allowing the FDIC to satisfy a judgment with a receiver certificate. There is an extremely limited exception to that rule under the sharp case. The primary problem with even discussing that issue is that it was not raised below. We heard in the brief that, sure, they didn't cite the sharp case. We've heard today they didn't even know about the sharp case. But even putting aside the sharp case, the notion that the FDIC itself engaged in some actionable conduct which harmed these folks and that based on that, the judgment could not be satisfied by a receiver certificate is not raised at all below. And it has nothing to do with the fact that this is a case where it's not raised at all below. It has nothing to do with the fact that this was a default judgment. Why is the – okay. That's where I need some illumination, because as I understand, their argument is that they argued the essence of sharp, but that in any event, the default judgment is basically judgment against FDIC and INCA jointly and severally, and then it lists all the various bases for the claims. And they say, well, there's nothing to attack there. And the FDIC has been found liable for breach of contract, therefore sharp. Where is that argument astray? Because sharp does not hold that every time the FDIC breaches a contract, okay, sharp does not hold that that means that a receiver certificate cannot be used. Now, let me just take one little sidetrack for a second to answer a question that Judge Gould asked that wasn't answered that I think goes right to the heart of what you're getting to, Your Honor. The question Judge Gould asked is, well, what was the FDIC, qua FDIC's breach here? Well, in fact, they did tell us what it is. They finally told us the answer to that in their reply brief in this case, which actually mirrored the same answer they gave the district court in their motion for – excuse me, their motion to strike. At page 19 of their reply brief in this case, they say, Meritage's position was always that the FDIC had breached the contract and unjustly enriched itself as established in the judgment, and they dropped a footnote 8. And they say, Meritage made similar points in its motion to strike. The FDIC has consistently abused its discretion as receiver and ignored its obligations to Meritage. As set forth above, the FDIC disallowed Meritage's claim. Your Honor, there is no mention of any action of the FDIC in the complaint in any of the four memoranda filed below or anywhere else in the record other than that it denied their complaint – excuse me, it denied their claim. And that cannot satisfy Sharpe if for no other reason than in Sharpe the claim was allowed. A critical point we have to go to, I believe, is the McCarthy case, which followed Sharpe. In the McCarthy case, this Court revisited Sharpe and said two critical things. It said first, quote, Sharpe was an unusual case, unquote. And that's 348F3rd at 1078. And that went on to explain in Sharpe – excuse me, in McCarthy, this Court said, quote, apart from claims arising out of a breach of contract in the circumstances present in Sharpe, we have held that a claimant must complete the claims process before seeking judicial review. And that's 348F3rd at 1079. So unless you have the circumstances in Sharpe, that kind of a breach of contract, Sharpe doesn't apply. Now, what were the circumstances in Sharpe? Well, we go to Sharpe. And in Sharpe, this Court said, quote, the Sharpes, who were the claimants there, the Sharpes were not required to submit their cause of action to the FDIC administrative process because they are not creditors of the FDIC. That's the critical point. That's at 126F3rd at 1156. The Court goes on to explain. The Sharpes were not, quote, creditors for the purposes of firea, unquote, okay, because, quote, it is only as a consequence of the FDIC's breach that the FDIC can construe the Sharpes as creditors of the FDIC, unquote. That's also 126F3rd at 1156. The point is this. What this Court said in Sharpe is that the Sharpe rule applies when and only when a breach of contract by the FDIC is the very first thing that pulls the claimant into the claims process. And that's why you don't get this problem of jumping line with the Sharpe exception. That's correct. And what the Court said is it says we don't want the FDIC to have the ability to force somebody who is otherwise not a creditor to be a creditor and to be in the claims process. Now, critically here, we have another admission in the ---- Before you leave that, you were saying against the FDIC, did you mean just the FDIC or did you mean the FDIC as a receiver? Well, FDIC as receiver, Your Honor. Okay. So in other words ---- So what your view is that when Judge Reimer wrote this opinion, she was cabining off Sharpe, some of the wider language of Sharpe? In the opinion below here? Yes. Well, I think ---- No, no, no, no. Judge Reimer was the one who wrote the case that you've been talking about. McCarthy. Yes, the McCarthy case. I was confused myself because I was just talking about Sharpe. Yes. When this Court looked at McCarthy and was trying to determine whether Sharpe applied in McCarthy, the Court wrote that McCarthy is limited in the respects that I've just outlined. And the critical one for purposes here is that as the Court pointed out in McCarthy, Sharpe held only that where the FDIC as receivers breach is the first event that makes the claimant a creditor for purposes of firea, only in that circumstance does Sharpe apply. The FDIC cannot force the claimant into the claims process. However, where before any alleged or purported breach of the FDIC occurs, if the claimant is already a creditor with respect to the amount that's being sought, if the claimant is already in the claims process, Sharpe is inapplicable. How does that apply here? Well, we know how it applies here because, again, in the reply brief of Meritage at page 4, they state as follows. And this is 1, 2, 3, 4 lines up from the bottom on page 4. It is undisputed that the only claim Meritige had at the beginning of the FDIC administrative process was the claim against the failed bank. They go on. To the best of Meritige's knowledge, neither the FDIC nor its successor, Rescon, had breached the contract or the covenant of good faith and fair dealing at the time Meritige filed the initial claim with the FDIC, end quote. In other words, there was an administrative claim pending for the very liability that's sought here, the nonpayments of these draw requests. Meritige was already a creditor within the meaning of firea. It already had an administrative claim pending. Well, counsel, Judge Gould, if I could ask you a question on this. For purposes of my question, I'm going to assume that your argument is correct, that sharp does not apply, and that under the Ninth Circuit precedent, the receiver could make payment on the debt pursuant to receiver's certificate. So assuming that's the case, why don't the claimants, why don't they have a claim still against Rescon? Because if this had been a liquidating receivership, for example, and they got their claim in a receiver certificate, all the assets that were present in the receivership would be available for the payout of the claims pro rata. So if some of those assets went to Rescon, then why shouldn't they have a claim against Rescon? There are three reasons, Your Honor. Two of them are jurisdictional, and one of them is a pure legal reason. The first jurisdictional reason is simply this. The only argument that they made before the district court that they had a claim against Rescon and Stearns was an argument that the contribution agreement, which is the agreement between the FDIC and Rescon, pursuant to which a whole parcel of loans, including this one, were passed to Rescon by the FDIC, their argument is that they are successors in interest because the liability here was transferred by that FDIC-Rescon agreement. They had initially argued to the district court that they could make that claim because they were intended third-party beneficiaries. That was a month before this Court decided GECCMC. In GECCMC, dealing with another claim that another FDIC agreement had assigned certain liabilities to claimants, this Court clearly held that if a claimant is neither a party to nor an intended third-party beneficiary of an FDIC purchase and assumption agreement, that individual does not have standing to argue how the contract should be interpreted and, therefore, cannot show the alleged assignment. How does that apply here? This contribution agreement, we know, Meritage was not a party, and they now concede  that they are not a party to nor an intended third-party beneficiary. Therefore, they do not have standing to interpret that agreement. In the absence of standing, they have no claim that the liability passed to Rescon, especially here where the FDIC's position is that it retained it. So that's the first part. The second part is, though they never raised this below, they are now suggesting, primarily in their reply brief, that they have an independent basis to go against Rescon and Stearns that doesn't require them to interpret the contribution agreement. The problem there is, is that their claim is still a claim to recover the money that they did not get when the bank failed to pay the draw requests. In other words, there's no way you can describe their claim without concluding that it relates to an act or omission of the poor bank. If the failed bank had paid the draw requests, they would have no claim. So the failed bank's failure to draw – excuse me, to pay the draw requests is an act or omission that relates to their claim. That means that that claim does not exist. There's no subject matter jurisdiction over it in a Federal court unless and until that claim has been exhausted through the FDIC's administrative process. And based on the language I just read a few moments earlier, Your Honor, in which they concede that the one and only claim that they ever submitted to the FDIC was the claim for breach of contract by the failed bank, they have necessarily never submitted the claim that Rescon and Stearns are responsible for this loss to the FDIC. That claim is jurisdictionally barred under the recent decision of the D.C. Circuit in the Westberg case, which is in a 28-J letter we submitted. Nevertheless, though we didn't cite it, while the facts are different, the law, the law that says that any claim that relates to an act or omission of a failed bank must go through the FDIC's claims process before a court will have jurisdiction. That's also the rule in this circuit under the Benson case, which is Benson v. J.P. Morgan Chase Bank, 673 F. 3rd, 1207. So, and by the way, there's an admission in the record, in the motion below, that they said that, listen, the district court denied their motion with respect to issuing a summons to Rescon and Stearns because the district court wrongly assumed a lack of standing by Rescon and Stearns. So we're not raising this issue out of left field. But even if we were, the bottom line is this. There are two subject matter jurisdiction bases why they cannot have claims against Rescon and Stearns. Now, even if the court were to ignore those or wanted to have an alternative, the bottom line here is what Batista said is that a receiver's certificate satisfies a judgment, satisfies a judgment. Okay? The judgment here was a judgment for the full amount that first, INCA, the contractor, and second, the failed bank, did not pay them. The money they want to seek from Rescon and Stearns, if they were successful, would be a judgment for the money that first, INCA, and then the failed bank didn't pay them. They elected their remedy. They sued the FDIC. They elected to pursue that to judgment and then default judgment, even though they knew, or under the governing law in this circuit, Batista should have known that a receiver's certificate was what they would likely get. They have a judgment. They have the receiver's certificate. And it's black-letter law. You cannot continue pursuing additional parties for additional judgments for the same liability. So the ñ in the reply brief, which you had focused on before, they acknowledged the recent case of GECCM and said that they recognize that claim is off the table. They ask at the end of that section, of course, to get rid of the receiver's certificate of satisfaction. And then they say, or at least clarify that the district court's orders do not preclude the assertion of claims against Rescon in another forum. And you're saying that there's no basis for even that remedy light, as we might call it, of limiting the district court orders as to potential for another forum. That's correct, Your Honor. I'm saying whether as a matter of subject matter jurisdiction or as a matter of the scope of the judgment that was entered, they cannot possibly pursue their claims against Rescon and Stearns. If they do, ultimately, in whatever court they pursue them, presumably Rescon and Stearns, those claims would be defeated. The reason why it comes up here is, okay, they've argued for clarification and they've argued and they've said, well, why did the district court do what it did in barring them from going against Rescon and Stearns? Well, they did say in their motion for reconsideration to the district court below that you wrongly assumed that there was no standing in Rescon. So they seemed to understand that the district court did that, and so we would ask you to affirm the district court's finding. Aside from that, this Court can always affirm a district court's ruling based on an alternative basis. And it strikes me that subject matter jurisdictional bases should be the ones considered first. And if I am correct, and I don't see, you know, given the law that there's much room for argument here, if I am correct that there is no subject matter jurisdiction over meritorious proposed claims against Rescon and Stearns, either because, A, they cannot pursue claims apart from the contribution agreement because there's no standing, or, B, they cannot pursue claims apart from the contribution agreement because they necessarily relate to an actual omission of the failed bank and they've never been submitted to the FDIC's administrative claim process. If they are jurisdictionally barred, the clarification they seek is not permitted. In fact, the clarification that they should receive is the clarification that they are jurisdictionally barred from proceeding against Rescon and Stearns, and they're also barred from proceeding against Rescon and Stearns because there is a satisfied judgment for the precise amount that they're seeking. Thank you. Thank you for your time, Your Honor. Would you put – I think you used up your time, but we've given the government some additional time as well. We'll put two minutes on the clock, please. I appreciate that, Your Honor. A lot to respond to there, so I'll try to move quickly. First of all, the jurisdictional arguments are jurisdictional arguments as to the original judgment, which is a default judgment that was never appealed. They are res judicata, period. What they're saying is that the district court didn't have jurisdiction to enter a judgment against them in the first place. That needed to be made at some point. It perhaps could have even been made in an appeal from the default judgment, which they had never showed up in before that point. It might have still even been possible to raise that, because you can raise it at any time, but you can't raise it in a later case. And for these purposes, this is effectively a later case, because what we're talking about is in post-judgment enforcement proceedings. The district court did not at all clearly rule as to Rescon's standings. And in fact, the standing argument that the agency is making, I believe Mr. Brooks knows that there's not. Can I ask you about that? Yes, Your Honor. Why should we clarify what the district court did or didn't do? In other words, let's say you think you have additional claims against Rescon, whether you have to go back to the FDIC and I don't know about the timing, but why should we bother ourself with that? If you decide you want to go somewhere else and make another claim, then it's determined. But if that's not necessary to our finding, why should we be trying to, in effect, make an advisory opinion on that? I mean, you pay your money, take your chances, and go to another forum. Why not? The easiest thing for you to do in this situation is to rule that the judge either didn't intend to or it wasn't res judicata because there weren't the same parties, it wasn't fully litigated, whatever. It simply isn't preclusive. We can go to the court. But why do we need to make that judgment, in other words? It could be addressed. They'll make that argument, you'll make your argument, and if there's another court or another case or another administrative agency. If the decision is clear that you are not precluding us from doing that, then that would be – I would argue that the satisfaction issue really should be decided, because it's a very clear legal issue and it's an issue of first impression and you've got a full record before you. But you don't have to. You're absolutely right. You could simply say we refute. This is something that needs to be addressed on a full record in the Rescon case. As to the Benson case, the relates-to argument that the agency has made is that it is extremely overbroad and was specifically rejected in the Benson case. The distinction between standing and third-party beneficiary was nicely dealt with in the district court decision in a case that I know, Your Honor, Judge McKeon dealt with last year, the Winkle Holdings case. I think that that distinction is established at this point, and it's an attack on the judgment anyway, so it shouldn't be reached. This is not an election of remedies situation. You can always pursue a guarantor after you've tried to pursue the previous person in the chain of title. In terms of actionable conduct under the Sharp case, again, the FDIC is trying to recharacterize the situation here. In Sharp, the first actionable event was before the receivership, very, very shortly before the receivership, but in fact, the FDIC – The bank had issued a check instead of – sorry, Your Honor, the bank – Can I apologize? Somebody in here had a phone that was on, so I apologize for that. Not a problem. Go on now. Thank you, Your Honor. In fact, the first breach was by the bank. The bank issued the wrong form of payment, was supposed to issue a wire that was immediately payable and instead issued a check. There's a slight difference in that the plaintiff in Sharp didn't even have to submit an administrative claim, but in fact, we did submit an administrative claim. So I think that our claim is, in fact, stronger than the Sharp argument. The idea that Sharp is predicated on you have to refrain from ever submitting an administrative claim, I think, is a strange one. It's sort of like the one they were talking about in the previous case, about they should have a sign over the door saying, don't come in here if you think you have a claim against the FDIC. But in fact, we wouldn't have had a claim against the FDIC until they breached by wrongfully rejecting our claim, which was a clearly documented claim they shouldn't have rejected. I think our case fits as closely as you can possibly – and it is an accident, because as I said, we had not – we didn't plead the entire complaint to be a Sharp claim. We pled it to be a judgment against the FDIC that then we would be able to collect on. Kennedy, I think we've got your argument well in mind. Kennedy, I have one question, if I may. Kennedy, yes, Your Honor. Kennedy, in fact, your claim is in part that FDIC breached by not processing and allowing your claim. And if allowing your claim, you would have gotten a receiver's certificate under Batista, then why wouldn't that be your damages, getting a receiver's certificate, be your damages for the claim that they breached by not allowing your claim in the first place? Because Sharp says it isn't, because Sharp specifically says a receivership is not payment if it's a Sharp type of a situation. That's the simplest answer. Thank you. The case just argued, Meritage Homes v. the FDIC is submitted. Thank you both for your argument and the briefing, and we're now adjourned.
judges: Wallace, McKeown, Gould